**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **MONEY MANAGEMENT** | § | |
| **INTERNATIONAL, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **CASE NO. _____** |
| | § | |
| **TUAN V. LE [a/k/a TUAN VAN LE,** | § | |
| **JOHNNY LE, JOHNNY VAN LE, JOHN** | § | |
| **TUAN LE, and JOHN LE], MONEY** | § | |
| **MANAGEMENT INTERNATIONAL** | § | |
| **CONSULTANT, and CAPITAL 1 FINANCE** | § | |
| **CONSULTANTS LLC, jointly and** | § | |
| **individually d/b/a MONEY MANAGEMENT** | § | |
| **INTERNATIONAL & CO., MONEY** | § | |
| **MANAGEMENT INT'L & CO., MONEY** | § | |
| **MANAGEMENT INT'L &** | § | |
| **CONSULTANTS, MONEY** | § | |
| **MANAGEMENT INT'L CONSULTANTS,** | § | |
| **MONEY MANAGEMENT** | § | |
| **INTERNATIONAL CO., and MONEY** | § | |
| **MANAGEMENT INTERNATIONAL** | § | |
| **CORP.,** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

Plaintiff Money Management International, Inc. ("MMI," the "Company," or "Plaintiff"),
hereby sues defendants Tuan V. Le [a/k/a "Tuan Van Le," "Johnny Le," "Johnny Van Le," "John
Tuan Le," and "John Le"] ("Defendant Le"), Money Management International Consultant
("Defendant MMI Consultant"), and Capital 1 Finance Consultants LLC ("Defendant Capital
1"), jointly and individually doing business as "Money Management International & Co.,"
"Money Management Int'l & CO," "Money Management Int'l & Consultants," "Money
Management INT'L Consultants," "Money Management International Co," and "Money

1

Management International Corp." (Defendant Le Defendant MMI Consultant, and Defendant Capital 1 are hereinafter collectively referred to as the "Defendants"), and respectfully alleges as follows:

## I.  STATEMENT OF THE CASE

1.     This is an action for federal trademark counterfeiting and infringement, false designations of origin, unfair competition, and cybersquatting pursuant to the provisions of the Trademark Act of 1946, 15 U.S.C. § 1051, et seq. (the "Lanham Act") and Anti-Cybersquatting Consumer Protection Act ("ACPA"), and more particularly, pursuant to 15 U.S.C. §§ 1114, 1116, 1117, 1125(a), and 1125(d).  Among other things, MMI seeks damages, injunctive relief, its reasonable attorney's fees and costs, and the forfeiture, cancellation, or transfer of the Defendants' domain name, "moneymanagementco.com," to MMI.

## II.  JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over the foregoing claims under 28 U.S.C. §§ 1331 and 1338, and 15 U.S.C. § 1121.

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial portion of the alleged unlawful conduct occurred within the Southern District of Texas ("District"), and, upon information and belief, Defendant Le resides in this District, Defendant MMI Consultant's office and principal place of business is in this District, Defendant Capital 1's office and principal place of business is in this District, and the Defendants all conduct business within this District.

4.     Upon information and belief, personal jurisdiction exists over the Defendants for the reasons set forth in paragraph 3 above, and because the Defendants further avail themselves of the privileges and protections of the laws of the State of Texas, such that this Court's assertion

of jurisdiction over the Defendants does not offend traditional notions of fair play and due process.

### III. THE PARTIES

5.      Plaintiff Money Management International, Inc. is a nonprofit corporation organized under the laws of the state of Texas, having an office and principal place of business at 14141 Southwest Freeway, Suite 1000, Sugar Land, Texas 77478.

6.      Defendant Tuan V. Le [a/k/a Tuan Van Le, Johnny Le, Johnny Van Le, John Tuan Le, and John Le] (again, "Defendant Le") is an individual, who, upon information and belief, resides at 6353 Richmond Avenue, Unit 126, Houston, Texas 77057, and conducts business within this District.

7.      Upon information and belief, Defendant Money Management International Consultant (again, "Defendant MMI Consultant") is a nonprofit corporation organized under the laws of the state of Texas, having an office and principal place of business at 6353 Richmond Avenue, Suite 126, Houston, Texas 77057.   Upon information and belief, Defendant MMI Consultant can be served with process by serving its registered agent, Defendant Le.

8.      Upon information and belief, Defendant Capital 1 Finance Consultants LLC (again, "Defendant Capital 1") is a limited liability company organized under the laws of the state of Texas, having an office and principal place of business at 230 TC Jester Blvd., Suite 140, Houston, Texas 77007.   Upon information and belief, Defendant Capital 1 can be served with process by serving its registered agent, Defendant Le.

9.      Upon information and belief, the Defendants are jointly and individually doing business as "Money Management International & Co.," "Money Management Int'l & CO," "Money Management Int'l & Consultants," "Money Management INT'L Consultants," "Money Management International Co," and "Money Management International Corp."

10.     Again, upon information and belief, the Defendants have actively participated in the wrongful conduct described herein within this District.

## IV. COMMON FACTUAL ALLEGATIONS

### A. Plaintiff's Services and Trademarks

11.     MMI is the nation's largest nonprofit credit counseling agency. The Company was incorporated in Texas in 2002 following a series of mergers, and has roots dating back to 1958.  MMI's headquarters are in Sugar Land, Texas, and with at least thirty-five (35) branch offices throughout the United States, MMI provides a wide variety of (1) printed instructional, educational, and teaching materials in the field of consumer debt and credit; and (2) financial counseling and educational services, including debt and budget counseling, student loan counseling, foreclosure counseling, bankruptcy education and certification programs, and organizational financial wellness programs.  Significantly, MMI has earned an A-plus rating from the Better Business Bureau, and a 5 [out of 5] Star rating from Trustpilot, for its high-quality products and services.

12.     Since at least 1998, MMI has continuously, exclusively, and substantially used the mark and trade name "Money Management International" in conjunction with the promotion and sale of its high-quality products and services, and MMI is the registered owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "MMI Registered Marks"):

| Trademark | Registration Number | Registration Date | Classes/Services |
|---|---|---|---|
| Money Management International (with rounded "MMI" design/logo) | 2,309,704 | Jan. 18, 2000 | IC 016 – printed instructional, educational, and teaching materials in the field of consumer debt and credit counseling |

4

| Money Management International (with rounded "MMI" design/logo) | 2,319,716 | Feb. 15, 2000 | IC 036 – consumer debt and credit counseling services |
|---|---|---|---|
| Money Management International | 6,168,927 | Oct. 6, 2020 | IC 016 – printed instructional, educational, and teaching materials in the field of consumer debt and credit counseling<br><br>IC 036 – credit counseling services; debt counseling services |

The MMI Registered Marks are used in conjunction with the high-quality products and services in the categories identified above. Copies of the Certificates of Registration for the MMI Registered Marks are attached hereto as **Exhibit 1**, and incorporated herein by reference.

13.     As indicated above, the MMI Registered Marks have been used in interstate commerce for many years to identify and distinguish MMI's high-quality products and services. Specifically, MMI has continuously, exclusively, and substantially used its "Money Management International (with the rounded 'MMI' design/logo)"[1] [Registration No. 2,309,704] and "Money Management International" [Registration No. 6,168,927] trademarks in interstate commerce to promote and sell its products including instructional, educational, and teaching materials in the field of consumer debt and credit counseling, since at least June 30, 1998.  Similarly, MMI has continuously, exclusively, and substantially used its "Money Management International (with the rounded 'MMI' design/logo)" [Registration No. 2,319,716] and "Money Management International" [Registration No. 6,168,927] trademarks in interstate commerce to promote and

---

[1]     The "MMI design/logo" is not limited to any specific color(s) (i.e., *all* colors are covered).  However, it is generally used or depicted in blue or blue and black, as the Defendants have unjustly seized upon in their use of counterfeits and infringements of the MMI Marks.

5

sell its services including consumer debt and credit counseling services, since at least February 28, 1998.

14.      The MMI Registered Marks are valid and subsisting, in full force and effect, and Registration Nos. 2,309,704 and 2,319,716 have achieved incontestable status pursuant to 15 U.S.C. § 1065.

15.      MMI is also, and at all times relevant hereto has been, the owner of all rights in and to the following common law trademarks: "Money Management International (with the rounded 'MMI' design/logo)," "Money Management International," "Money Management," "MMI," and the "rounded 'MMI' design/logo."   MMI has continuously, exclusively, and substantially used the foregoing common law trademarks in interstate commerce to promote and sell the products and services referenced in paragraph 13 above, among others, since at least the dates referenced therein.  MMI is also, and at all times relevant hereto has been, the owner of all rights in and to the common law trademark, "moneymanagement.org."   MMI registered the domain name, "moneymanagement.org," on or about September 2, 1998, and MMI has continuously, exclusively, and substantially used the "moneymanagement.org" mark in interstate commerce to promote and sell the products and services referenced in paragraph 13 above, among others, since in or about September 1998 (the aforementioned common law trademarks are collectively referred to herein as the "MMI Common Law Trademarks")

16.      MMI uses the MMI Registered Marks and the MMI Common Law Trademarks (collectively, the "MMI Marks") to promote and sell its high-quality products and services through a wide variety of mediums or platforms, including MMI's website, moneymanagement.org.; MMI's blog posts; MMI's budget guides; social media such as Facebook, Twitter, Instagram, and LinkedIn; the websites of third-party financial institutions and

government agencies such as Fidelity Investments and the U.S. Department of Housing and Urban Development ("HUD"); Yellowpages.com; brochures, fliers and similar materials used during MMI's in-person credit and debt counseling sessions; and course material literature used during MMI's classroom teaching sessions.  Samples of the MMI Marks being used in such mediums are attached hereto as **Exhibit 2**, and incorporated herein by reference.

17.    Long before the Defendants' began engaging in the misconduct complained of herein, the MMI Marks became distinctive by acquiring secondary meaning through usage as the exclusive source indicators of MMI's high-quality products and services.  Consequently, consumers, the public, and the trade immediately associate any product, service, promotion or advertisement bearing or otherwise connected with the MMI Marks as being affiliated with MMI.

18.    MMI has expended considerable time, effort, and resources establishing the outstanding reputation and extensive goodwill associated with the MMI Marks, which serve as symbols of MMI's high quality, reputation, and goodwill.

19.    The MMI Marks have never been assigned or licensed in any way to the Defendants, and MMI has never authorized or consented in any way to the Defendants' use of the MMI Marks or any marks confusingly similar thereto.

20.    MMI goes to great lengths to police and enforce the MMI Marks, and the MMI Marks have never been abandoned.

B.  **Defendants' Unlawful Activities**

21.    Upon information and belief, Defendant Le formed Defendant Capital 1 on or about January 10, 2018.  According to documents filed in the Office of the Texas Secretary of State ("Texas Secretary of State's Office"), Defendant Le is the organizer, governing manager,

and registered agent of Defendant Capital 1.  Upon information and belief, Defendant Le is also a moving, active, and conscious force behind the operation of Defendant Capital 1 and its unlawful activities complained of herein.

22.     Upon information and belief, Defendants Le used the name "Capital 1" in forming Defendant Capital 1 to unjustly benefit from the reputation and goodwill associated with Capital One Financial Corporation ("Capital One"), and Defendants Le and Capital 1 were willfully using infringements of Capital One's trademarks to promote and sell their services until Capital One threatened legal action against them.

23.     Consequently, upon information and belief, Defendant Le formed Defendant "*Money Management International* Consultant," a Texas nonprofit corporation, on or about November 8, 2019.  Upon information and belief, Defendant Le did so with (1) full knowledge of MMI's ownership of the MMI Marks (including MMI's exclusive rights to use and license the MMI Marks); (2) full knowledge that he was not authorized to use the MMI Marks in any way; and (3) intent to benefit financially from the outstanding reputation and extensive goodwill associated with the MMI Marks.

24.     According to documents filed in the Texas Secretary of State's Office, Defendant Le is a director of Defendant MMI Consultant, and its registered agent.  Upon information and belief, Defendant Le is also a moving, active, and conscious force behind the operation of Defendant MMI Consultant and its unlawful activities complained of herein.

25.     The Defendants' website (moneymanagementco.com) and Facebook accounts state that the Defendants provide, among other things, credit and debt counseling services, and

8

the Defendants' standard customer agreement defines their services as "credit consulting."[2] Again, MMI has used its MMI Marks to promote and sell its high-quality credit and debt counseling services since long before the Defendants began offering such services, and MMI's Trademark Registration Nos. 2,319,716 and 6,168,927 are registered for such services. Moreover, upon information and belief, the Defendants' reputation and services are far inferior to MMI's reputation and its high-quality products and services.

26.     Upon information and belief, with intent to profit from the outstanding reputation and goodwill associated with the MMI Marks, the Defendants are not only using counterfeits and infringements of the MMI Marks to promote and sell their inferior services, but just as Defendant Le did when he formed Defendant MMI Consultant, they are continuing to actually incorporate MMI's name and federally registered "Money Management International" trademark (or the abbreviations thereof, "Money Management Int'l" or "Money Management Int") into the very names by which they are doing business.   Specifically, upon information and belief, the Defendants are jointly and individually doing business as "*Money Management International* & Co.," "*Money Management Int'l* & CO," "*Money Management Int'l* & Consultants," "*Money Management INT'L* Consultants," "*Money Management International* Co," "*Money Management International* Corp.," "*Money Management Int* Co," and other substantially indistinguishable or confusingly similar variants thereof, as reflected in the samples of screenshots from the Defendants' websites and Twitter, Facebook and Instagram accounts that are attached hereto as **Exhibit 3**, and incorporated herein by reference.

---

[2]     Samples of screenshots from the Defendants' websites and Facebook accounts promoting these services are included in **Exhibit 3**, and a copy of the Defendants' standard customer agreement is attached hereto as **Exhibit 9**.

27.     In fact, to further promote and sell the Defendants' services, Defendant Le has misrepresented that he is the President of MMI.  For example, Defendant Le's LinkedIn profile boldly misrepresents that he is the "President at *Money Management International*," and prominently incorporates and displays a copy of MMI's federally registered trademark, "Money Management International (with the rounded 'MMI' design/logo in the color blue)" [Registration Nos. 2,319,716 and/or 2,309, 704].  Screenshots of Defendant Le's LinkedIn profile are attached hereto as **Exhibit 4**, and incorporated herein by reference.  Upon information and belief, Defendant Le's LinkedIn profile is or was formerly linked to, among other things, MMI's LinkedIn profile and the Defendants' websites.

28.     As further reflected in **Exhibit 3,** the Defendants are also using other marks and names in conjunction with their services that are identical, substantially indistinguishable, or confusingly similar to the MMI Marks, including "Money Management," "Money Management Mortgage Int'l Corp." and  "Money Management Co."  Indeed, the Defendants are using the wording "Money Management" prominently, distinctively, and in a manner that distinguishes it from other wording in their marketing materials; and hence, as a trademark/source identifier of their services in direct violation of MMI's intellectual property rights.  Moreover, the Defendants are causing further harm to MMI by their extensive use of a *rounded* "M design/logo (including the color *blue*)" placed in close proximity to the wording "Money Management," which is confusingly similar to MMI's *rounded* "MMI design/logo" (which again, generally includes the color *blue*) that has long and prominently been placed in close proximity to MMI's "Money Management" or "Money Management International" marks as reflected in, among other things, MMI's Trademark Registration Nos. 2,309,704 and 2,319,716.

29.     The Defendants have further incorporated the wording "*Money Management*" into at least one of their domain names, "moneymanagementco.com," making it substantially indistinguishable from, or at least confusingly similar to, MMI's distinctive "Money Management" and "moneymanagement.org" trademarks, among others.  Upon information and belief, Defendant Capital 1 registered "moneymanagementco.com" on or about January 19, 2021 – which is long after MMI's "Money Management," "moneymanagement.org," and the other MMI Marks became distinctive – and the Defendants have continued to use that domain name for their website, moneymanagementco.com, with bad faith intent to profit from the reputation and goodwill associated with MMI and the distinctive MMI Marks.[3]  Indeed, the Defendants' bad faith intent is amply evidenced by, among other things, the many examples of the Defendants' willful infringing activities and other unlawful efforts to profit unjustly from the reputation and goodwill of MMI and the MMI Marks, as set forth in this Complaint.

30.     The Defendants extensive and willful use of "Money Management International," "Money Management Int'l," "Money Management," "MMI," the "MMI design/logo," and/or any other substantially indistinguishable or confusingly similar marks in conjunction with their inferior services is likely to cause, **and has in fact caused**, confusion, mistake, or deception among consumers, the public, and the trade as to the source, origin, sponsorship, and approval of the Defendants' services.  Specifically, as set forth below, the Defendants extensive and willful use of the foregoing marks has caused both consumers and trade members to erroneously believe that the Defendants and their inferior services are associated with or approved by MMI when, in fact, they are not.

---

[3]     MMI would further note that at least one of the Defendants' other domain names, "wefixuglycredit.com," automatically redirects online traffic to the Defendants' moneymanagementco.com website.

31.    For instance, in or around early March 2020, MMI was contacted by Vistaprint Corporate Solutions, Inc. ("Vistaprint") regarding two (2) "outstanding invoices" totaling $26,816.72 for business cards and other promotional items that were purportedly purchased by MMI.  MMI advised Vistaprint that it had not made any such purchases, and Vistaprint provided MMI with copies of the invoices ("Vistaprint Invoices" or "Invoices"), which are attached hereto as **Exhibit 5**, and incorporated herein by reference.  These Invoices were made out to "Money Management INT'L."  Vistaprint told MMI that all of the orders had been placed by "someone named *Johnny Le*," and that he had passed himself off as working for MMI.  In fact, Vistaprint told MMI that when Defendant Le contacted Vistaprint's business development representative, he provided them with MMI's Dun & Bradstreet DUNS number so that Vistaprint could do a credit check.  Vistaprint also told MMI that Defendant Le's LinkedIn profile – which again, states that he's the "*President at Money Management International*" and prominently displays a copy of *MMI's federally registered "Money Management International (with the rounded "MMI' design/logo)" trademark* – is underlined to MMI's LinkedIn page.

32.    After MMI advised Vistaprint that neither Defendant Le nor his company were associated with MMI in any way, Vistaprint told MMI that it should stop Defendant Le from engaging in such deception, because he is ruining MMI's credit.  In fact, Vistaprint provided MMI with a copy of its then-current Dun & Bradstreet credit report ("D&B Report"), which not only showed the damage that Defendant Le's deceptive and infringing activities had done to MMI's credit, but it listed Defendant Le as a *Director and the CEO of MMI*, and further listed *Defendant Le's cell phone number as MMI's telephone number*.  A copy of the relevant portions of the D&B Report are attached hereto as **Exhibit 6**, and incorporated herein by reference

33.     Accordingly, on or about March 6, 2020, MMI's counsel sent the Defendants a letter advising them of MMI's trademark rights and demanding that they cease and desist from engaging in the infringing activities described above ("First C&D Letter").   A copy of MMI's First C&D Letter is attached hereto as **Exhibit 7**, and incorporated herein by reference.   On or about March 8, 2020, Defendant Le responded to MMI's First C&D Letter by stating that he would not comply.   A copy of Defendant Le's response is attached hereto as **Exhibit 8**, and incorporated herein by reference.

34.     MMI has also been contacted by consumers who were unhappy with the Defendants' services, and who were either confused as to whether the Defendants were affiliated with MMI or at least wanted to let MMI know that the Defendants were using and soiling MMI's name and reputation.   For instance, on or about January 14, 2021, MMI received a call from a man who was upset about the credit consulting services he was receiving from a person named "*Johnny Le*," who claimed to be the president of MMI.   The man claimed that the only thing that Defendant Le was doing was taking his money, and he sent MMI a link to Defendant Le's LinkedIn profile referenced in paragraphs 27 and 31 above.   MMI advised the man that Defendant Le is neither employed nor affiliated with MMI.

35.     Similarly, on or about March 26, 2021, MMI received a call from a woman who was preparing to take legal action against "*John Tuan Le*."   She said that Defendant Le was using MMI's name and logo, and she wanted to confirm whether MMI was associated with MMI.   MMI advised her that it wasn't associated with Defendant Le.   The woman sent MMI a document certifying that a certificate of formation for Defendant Le's company, "*Money Management International* Consultants," had been filed with the Texas Secretary of State's Office on November 8, 2019, and she said that the Defendants were also using MMI's name in

13

their standard customer agreement, a copy of which is attached hereto as **Exhibit 9**, and incorporated herein by reference.  The woman believed that Defendant Le was "deliberate[ly] piggy back[ing] on [MMI] to ... [scam] people out of money," and that MMI should stop him before he  "messes up [MMI's] reputation."

36.     In light of these incidents, MMI's counsel sent the Defendants a second letter on or about January 19, 2021, advising them again of MMI's trademark rights and demanding that they cease and desist from engaging in the infringing activities described above ("Second C&D Letter").   A copy of MMI's Second C&D Letter is attached hereto as **Exhibit 10**, and incorporated herein by reference.  On or about March 31, 2021, MMI's counsel sent the Second C&D Letter (or a substantially similar version thereof) to the Defendants at two additional addresses that had come to light, a copy of which is attached hereto as **Exhibit 11**, and incorporated herein by reference.  The Defendants never responded to MMI's Second C&D Letter.

**C.  Summary of Defendants' Unlawful Activities**

37.     By using counterfeits and infringements of the MMI Marks in conjunction with their services, the Defendants have traded on the goodwill and reputation of MMI and created the false impression that the Defendants' inferior services are affiliated with MMI.

38.     Indeed, the Defendants have unjustly enriched themselves by illegally using and misappropriating MMI's intellectual property for their own financial gain.  Furthermore, the Defendants have unfairly benefited and profited from MMI's outstanding reputation for high-quality products and services, and MMI's significant advertising and promotion of its products, services, and the MMI Marks.

39.    Through their unauthorized and willful use of the MMI Marks or marks confusingly similar thereto, the Defendants have disparaged MMI, its products and services, and the MMI Marks by creating a false association between the Defendants (and their inferior services) and MMI (and its high-quality products and services, and MMI Marks).

40.    MMI has no control over the nature and quality of the services that the Defendants are providing, and for which the Defendants are extensively, willfully, and without authorization using the MMI Marks to promote and sell.

41.    Among other things, the Defendants' unauthorized and willful use of the MMI Marks or marks confusingly similar thereto in conjunction with their inferior services has and will continue to (1) reflect adversely on MMI as the believed source of origin of the Defendants' services; (2) hamper continuing efforts by MMI to protect its outstanding reputation for high-quality products and services; (3) tarnish the goodwill and demand for MMI's high-quality products and services; and (4) dilute the distinctive quality of the MMI Marks.

42.    Upon information and belief, the Defendants are engaging in such misconduct knowingly and intentionally, or with reckless disregard or willful blindness to MMI's rights, for the purpose of trading on MMI's outstanding reputation and goodwill.  Therefore, this case constitutes an exceptional case under 15 U.S.C. § 1117(a).

43.    MMI has suffered irreparable harm and substantial damages as a result of the Defendants' misconduct.  The injuries and damages sustained by MMI have been directly and proximately caused by the Defendants' extensive and willful use of the MMI Marks or marks confusingly similar thereto in connection with the promotion and sale of their inferior services. If the Defendants' infringing activities are not preliminarily and permanently enjoined by this Court, MMI, the consuming public, and the trade will continue to be harmed.

44.     MMI has no adequate remedy at law.

## V.  CAUSES OF ACTION

### 1.  Trademark Counterfeiting and Infringement

45.     MMI repeats and re-alleges every allegation contained in paragraphs 1 through 44 as if fully set forth herein.

46.     15 U.S.C. § 1114 prohibits the "use in commerce of any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, and/or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."

47.     Upon information and belief, the Defendants have used counterfeits, copies, and/or colorable imitations of the MMI Marks in connection with their advertisement, promotion, offers to sell, and sale of credit counseling, debt counseling, and similarly related services.  Specific examples of the Defendants' willful and unauthorized use of the MMI Marks are attached hereto as **Exhibits 3** and 9, and are discussed in paragraphs 21 through 36 above.

48.     The Defendants' counterfeiting and infringing use of the MMI Marks is likely to cause and actually is causing confusion, mistake, and deception among consumers, the public, and the trade as to the origin and quality of the Defendants' services.

49.     The Defendants' unlawful actions have caused and are continuing to cause irreparable harm and unquantifiable damages to MMI, and are unjustly enriching the Defendants with profits at MMI's expense.

50.     The Defendants' above-described illegal actions constitute counterfeiting and infringement of the MMI Marks in violation of MMI's rights under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

51.     MMI has sustained irreparable harm, injury, and monetary damages caused by the Defendants' misconduct, and absent an entry of an injunction by this Court, MMI will continue to suffer irreparable injury to its goodwill and business reputation as well as monetary damages.

52.     MMI is entitled to actual damages suffered, profits obtained by the Defendants attributed to their illegal conduct, and/or statutory damages for the Defendants' counterfeiting and infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1117.

### 2.  False Designations of Origin, and Unfair Competition

53.     MMI repeats and re-alleges every allegation contained in paragraphs 1 through 44 as if fully set forth herein.

54.     15 U.S.C. § 1125(a) imposes liability on any person who, "in connection with any goods or services, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person as to the origin, sponsorship, or approval of his goods, services, or commercial activities by another person."

55.     Here, the Defendants are using in commerce words, terms, names, symbols, false designations of origin, false or misleading descriptions of fact, and false or misleading representations of fact, to promote and sell their services, which are likely to cause, **and have caused**, consumers, the public, and the trade to erroneously belief that the Defendants and their inferior services are affiliated or associated with, or sponsored or approved by, MMI when, in fact, they are not.  Moreover, upon information and belief, the Defendants are doing so with full

knowledge of the falsity of such designations of origin, descriptions, and representations, all to the detriment of MMI.

56.     Specifically, Defendant Le is misrepresenting that he is MMI's President, and the Defendants are using counterfeits and infringements of the MMI Marks, to advertise, promote, and sell their services. Such misconduct is likely to cause, and has caused, confusion among consumers and trade members as discussed in paragraphs 21 through 36 above.

57.     The Defendants' actions described above are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

58.     MMI has sustained injury and damage caused by the Defendants' misconduct, and absent the entry of an injunction by this Court, MMI will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages. MMI has no adequate remedy at law.

### 3.  Cybersquatting

59.     MMI repeats and re-alleges every allegation contained in paragraphs 1 through 44 as if fully set forth herein.

60.     The Anti-Cybersquatting Consumer Protection Act (15 U.S.C. § 1125(d)) imposes liability on any person who "has a bad faith intent to profit from [a] mark ... and registers ... or uses a domain name that, in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark."

61.     Again, the Defendants have incorporated the wording "*Money Management*" into at least one of their domain names, "moneymanagementco.com," making it substantially indistinguishable from, or at least confusingly similar to, MMI's distinctive "Money Management, "moneymanagement.org," and other MMI Marks.  The Defendants registered their

domain name, "moneymanagementco.com," long after the foregoing MMI Marks became distinctive, and the Defendants have continued to use that domain name for their website, moneymanagementco.com., with bad faith intent to profit from the reputation and goodwill associated with MMI and the distinctive MMI Marks.  Such bad faith intent is evidenced by, among other things, the Defendants' willful infringing activities and other unlawful efforts to profit unjustly from the reputation and goodwill of MMI and the MMI Marks, as set forth in paragraphs 21 through 36 above.

62.     The Defendants' actions described above are in violation of the ACPA, 15 U.S.C. §1125(d).

63.     MMI has sustained injury and damage caused by the Defendants' misconduct, and absent the entry of an injunction – as well as an order by this Court that the Defendants' domain name, "moneymanagementco.com," be forfeited, canceled, or transferred to MMI – MMI will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

64.     MMI has no adequate remedy at law.

## VI.  PRAYER FOR RELIEF

65.     For these reasons, MMI respectfully requests that this Court enter judgment in its favor and against the Defendants as follows:

A.     Enter preliminary and permanent injunctions pursuant to 15 U.S.C. § 1116 and Federal Rule of Civil Procedure 65 enjoining the Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation with them, from (1) infringing, counterfeiting, or diluting the MMI Marks; (2) using the MMI Marks, or any mark or trade dress similar thereto, in connection with the advertisement, promotion, offering for sale, or

sale of any credit counseling, debt counseling, financial counseling, financial management, or financial education services or goods; (3) using the MMI marks or any marks similar thereto (including without limitation, "Money Management") in any domain names/URL; (4) using any logo, trade name or trademark or trade dress that may be calculated to falsely advertise the Defendants' goods or services as being sponsored by, authorized by, endorsed by, or in any way associated with MMI; (5) falsely representing themselves as being connected with MMI through employment, sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade or purchasing public to believe that the Defendants' goods or services are in any way endorsed by, approved by, or associated with MMI; (6) using any reproduction, counterfeit, infringement, copy, or colorable imitation of the MMI Marks in connection with the publicity, promotion, sale, or advertising of any goods or services sold by the Defendants; (7) using in connection with the sale of any goods or services, a false description or representation, including words or other symbols tending to falsely describe or represent the Defendants' goods or services as being those of MMI, or as being endorsed in any way by MMI, and from offering such goods or services in commerce; and (8) otherwise unfairly competing with MMI;

B.      Order that the Defendants remove or destroy all marketing materials, web content, social media content, and any other printed materials or products bearing the "Money Management International," "Money Management Int'l," "Money Management," "MMI," "MMI design/logo," and/or "M design/logo" designations.

C.      Order that the Defendants transfer their domain name, "moneymanagementco.com," to MMI, and that any and all transfer costs be paid by the Defendants; or alternatively, that the Defendants take down or remove their

moneymanagementco.com website, and forfeit or cancel their "moneymanagementco.com" domain name;

      D.    Award MMI statutory damages pursuant to 15 U.S.C. § 1117 in the amount of two million dollars ($2,000,000.00) for each counterfeit mark used for each type of good or service sold, offered for sale, or distributed by the Defendants; or, in the alternative, MMI requests judgment for actual damages plus damages equal to any profits attributable to the Defendants' violations pursuant to 15 U.S.C. § 1117;

      E.    Award MMI punitive or trebled damages provided by statutory law;

      F.    Award MMI its costs, including reasonable attorneys' fees, and prejudgment and post judgment interest at the maximum rates allowed by law; and

      G.    Award any further relief as the Court deems just and proper.

Dated: June 3, 2021

Respectfully submitted,

BY:  s/Steven M. Abbott
     Steven M. Abbott
     State Bar No. 00797825
     Federal I.D. No. 9027
Attorney-in-charge for Plaintiff
Money Management International
6363 Woodway Drive, Suite 825
Houston, Texas 77057
Telephone: (713) 467-1669
Facsimile:  (713) 467-4936
E-mail: abbottsteven@hotmail.com