United States District Court
Southern District of Texas
**ENTERED**
April 27, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT  SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Money Management International, Inc., § <br> Plaintiff, § <br> § <br> v. § <br> § <br> Tuan V. Le, et al, § <br> Defendants. § | Civil Action H-21-1802 |

## Memorandum and Recommendation

Money Management International, Inc. (MMI) moves for default judgment against Tuan V. Le, Capital 1 Finance Consultants LLC, and Money Management International Consultant (Defendants). ECF No. 21. MMI seeks a permanent injunction, statutory damages in the amount of $1,000,000, an order to transfer or, alternatively, to cancel the domain name "moneymanagementco.com," attorneys' fees in the amount of $43,120, costs in the amount of $971.59, and post-judgment interest. ECF No. 21 at 46. MMI's motion is granted in part and denied in part.

*1. Background*[1]

MMI has operated as a credit counseling agency since 1958 and was incorporated in 2002. ECF No. 1 at 4. MMI is a nonprofit corporation which operates at least thirty-five branches in the United States providing education and counseling services for consumer debtors. *Id.* at 4. MMI is the largest organization of its type in the United States. *Id.* MMI is funded by a variety of sources, including the federal government, with few fees charged to consumers. ECF No. 22-2 at 3.

---

[1] As discussed below, because the court must accept all well-pleaded factual allegations as true, the background facts are taken only from the Plaintiff's complaint.

MMI is the owner of two federally registered trademarks at issue in this case: a round logo and "Money Management International." ECF No. 1-1. MMI has also used a variety of similar common law trademarks related to the registered trademarks. ECF No. 22-2 at 3–4. MMI has used both the registered and common law trademarks since February of 1998. *Id.* at 2–4. Since September of 1998, MMI has operated its website using the domain name "moneymanagement.org." *Id.* at 3–4.

Defendant Le is the principal organizer, operator, and registered agent of named Defendants Capital 1 Finance Consultants LLC and Money Management International Consultant. ECF No. 1 at 7–8. Defendant Le incorporated Defendant Money Management International Consultant as a Texas nonprofit corporation on or about November 8, 2019. *Id.* at 8. Defendants offer credit and debt consulting services. *Id.* at 8–9.

Defendant Le operates a LinkedIn profile listing himself as President and CEO of MMI with MMI's registered round logo prominently displayed. ECF Nos. 1 at 9; 1-4 at 2. Defendants also operate other social media profiles under variations of "money management international." ECF No. 1-3 at 21–31. Defendants have operated a website under the domain name "moneymanegementco.com" since January 19, 2021. ECF No. 1 at 11. Defendant Le also operates at least two other websites. ECF No. 1-3 at 2. The social media profiles and website prominently display a round logo accompanied by the text "Money Management INT'L & Co." ECF No. 1-3.

In March of 2020, MMI was notified by a vendor of outstanding credit invoices for orders placed by Defendant Le. ECF No. 1 at 12. The vendor provided MMI with a copy of a Dun & Bradstreet corporate credit report listing Defendant Le as Director and CEO of MMI and a contact number for MMI that is Defendant Le's cell phone number. *Id.*

On March 6, 2020, MMI sent Defendant Le a cease-and-desist notice. ECF No. 1-7 at 1–5. On March 8, 2020, Defendant Le

responded that he would not comply with the cease-and-desist. ECF No. 1-8 at 1–7. MMI was subsequently contacted on multiple occasions by different individuals who were unhappy with the services they had received from Defendants. ECF No. 1 at 13. MMI sent two further cease-and-desist notices to Defendant Le on January 19, and March 31, 2021. ECF No. 1-10, 1-11. Defendants did not respond to either of these letters. ECF No. 1 at 14.

MMI filed this lawsuit on June 3, 2021, raising claims under the Lanham and Anti-Cybersquatting and Piracy Acts (ACPA). ECF No. 1 at 16–19. Defendants were properly served. ECF Nos. 8–10. Defendants did not file an appearance or answer the complaint. The Clerk entered default against Defendants on August 16, 2021. ECF No. 15. MMI now moves for a default judgment. ECF No. 21.

2. *Analysis*
   a. *Default Judgment*

A motion for default judgment requires the court to determine: (1) if a default judgment is procedurally appropriate; (2) if the plaintiff has presented a colorable claim; and (3) how to calculate damages or equitable relief. *Vela v. M&G USA Corp.*, 2:17-cv-13, 2020 WL 421188, at *1 (S.D. Tex. Jan. 27, 2020). The court must consider relevant factors including

> whether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

A default judgment "must be supported by well-pleaded allegations and must have a sufficient basis in the pleadings." *Wooten v. McDonald Transit Assoc., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). Well-pleaded factual allegations are assumed to be true, except regarding damages. *United States v. Shipco Gen., Inc.*, 814 F.2d 1011,

3

1014 (5th Cir. 1987). Judgments by default are a drastic remedy and are disfavored by the courts. *Charlton L. Davis & Co., P. C. v. Fedder Data Ctr., Inc.*, 556 F.2d 308, 309 (5th Cir. 1977); *see also Lindsey*, 161 F.3d at 893.

MMI has shown that the complaint, summons, and other documents were served on Defendant Le in his personal capacity and as the registered agent for Money Management International Consultant and Capital 1 Finance Consultants LLC. ECF No. 8–10. Defendants have not answered or otherwise responded in the nine months since proper service. The Clerk's entry of default was appropriate as to all Defendants. ECF No. 15. The court has not been made aware of any material fact disputes at issue. There is no evidence that entering a default judgment would substantially prejudice Defendants given the facts of this case. MMI has shown that it suffers substantial prejudice from ongoing violations of law by Defendants. Nor is there evidence that the Defendants' default was caused by good faith mistake or excusable neglect. Default judgment is harsh, but not unduly harsh given that Defendants were properly served and appear to have ignored this lawsuit entirely. The court sees no reason it would later be obliged to set aside the default. All of the *Lindsey* factors weigh in favor of a default judgment being procedurally appropriate.

The court now considers whether MMI has presented colorable claims for relief.

    b. *Lanham Act Claims*
        i. *Trademark Infringement*

MMI's well-pleaded factual allegations present colorable claims for trademark infringement under 15 U.S.C. § 1114(1) based on Defendants' use of both the round logo and variants of "Money Management International." ECF No. 1 at 4–14.

To establish trademark infringement under 15 U.S.C. § 1114(1), MMI must own a valid and enforceable registered trademark and Defendants' use of the trademark must have created a likelihood of confusion as to source, affiliation, or sponsorship. 15 U.S.C. § 1114(1); *Nat'l Bus. Forms & Printing v. Ford Moto Co.*, 671 F.3d 526, 532 (5th

4

Cir. 2012). Courts are directed to look to a non-exhaustive list of eight factors to determine the likelihood of confusion. *Bd. of Supervisors for Louisiana State University Agric. and Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008). No single factor is dispositive. *Id.* However, "[e]vidence that consumers have been actually confused in identifying the defendant's use of a mark as that of the plaintiff may be the best evidence of a likelihood of confusion." *Id.* at 483.

MMI has demonstrated that it owns a valid and enforceable federally registered trademark in the round logo. ECF No. 1-1 at 2. MMI has shown that the use of the substantially similar logo by Defendants has led to actual confusion based on the reports of a vendor and various consumer complaints. ECF No. 1 at 11–14. MMI has also pleaded that Defendant Le's use of MMI's registered trademark on his LinkedIn profile has led to actual confusion. *Id.* at 8. Because well-pleaded factual allegations are accepted as true in the context of a default judgment, MMI has established actual confusion through Defendants' use of its marks. Defendants have therefore infringed on MMI's trademark regarding the round logo.

MMI has also demonstrated that it owns a valid and enforceable federally registered trademark in "Money Management International." ECF No. 1-1 at 4. MMI has shown that Defendants' use of trivial variations on "Money Management International" are substantially similar to MMI's "Money Management International" mark. ECF No. 1 at 9. The court accepts as true that "Money Management International" acquired distinctiveness through secondary meaning by virtue of the time in use and quality of its products and services. ECF No. 1 at 7. MMI has also shown that the Defendants' usage has caused actual confusion based on the reports of a vendor and consumers. ECF No. 1 at 11–14. The similarity between the debt and credit counseling services offered by the parties further supports this finding. ECF No. 1 at 1, 8–9. Defendants have infringed on MMI's trademark through their use of variations of "Money Management International."

*ii. False Designation of Origin and Unfair Competition*

MMI's well pleaded factual allegations present colorable claims of false designation of origin and unfair competition under 15 U.S.C. § 1125. ECF No. 21 at 21–26.

"The factors relevant to [15 U.S.C. § 1125] are essentially the same as those relevant in determining trademark infringement." *Sun-Fun Prods., Inc. v. Suntan Rsch. & Dev. Inc*, 656 F.2d 186, 192 (5th Cir. 1981). The inquiry, however, is "significantly broader" and "is not similarity of the [trademark] but similarity in the overall trade dress." *Id.*; *see also Gruma Corp. v. Mexican Rests., Inc.*, 497 F. App'x 392, 397 (5th Cir. 2012) (citing *id.*). In finding a violation under Section 1125 "the descriptive words attached... are relatively unimportant when determining whether the marks are similar." *See Gruma Corp.*, 497 F. App'x at 397. As in trademark infringement, there must be a likelihood of confusion between the two services. *See id.* at 398. Similarity between services offered increases the likelihood of confusion, though "parties do not have to be direct competitors to establish likelihood of confusion." *Id.*

Based on the Fifth Circuit's holding in *Sun-Fun* and *Gruma* that the factors relevant to 15 U.S.C. § 1125 are "essentially the same" as trademark infringement, the court will not repeat the analysis in Part 2.b.i, above. *Cf. Sun-Fun*, 656 F.2d at 192.

The court's finding that the Defendants' infringed upon MMI's round logo and "Money Management International" means the Defendants are also liable to MMI for false designation of origin and unfair competition. Defendants have violated 15 U.S.C. § 1125(a)(1) through their use of a confusingly similar round logo and "Money Management International."

*iii. Trademark Counterfeiting*

MMI's well-pleaded factual allegations present colorable claims for trademark counterfeiting under 15 U.S.C. § 1114(1) regarding both its round logo and "Money Management International." ECF No. 1 at 4–14.

6

"To state a claim for trademark counterfeiting under 15 U.S.C. § 1114(1), a plaintiff must allege that (1) defendants committed a trademark infringement in violation of 15 U.S.C. § 1114(1)(a), and (2) intentionally used the trademark knowing it was a counterfeit, as the term is defined in 15 U.S.C. § 1116." *Springboard to Educ., Inc. v. Kipp Found.*, 325 F. Supp. 3d 704, 713 (N.D. Tex. 2018) (citation omitted). "Counterfeit mark" for this purpose means the mark is federally registered and in use. *See* 15 U.S.C. § 1116(d)(1)(B).

MMI has shown that it owned and used a valid, federally registered trademark in the round logo since January 18, 2000. ECF Nos. 1 at 4–6; 1-1 at 2. MMI has also shown that Defendant Le is using an exact copy of MMI's registered round logo in his LinkedIn profile. ECF Nos. 1 at 9; 1-4 at 2. MMI has further shown that Defendants' round logo is a colorable imitation of their valid, registered trademark. *Id.;* ECF Nos. 1-1 at 2; 1-3 at 53–65. MMI has also shown this counterfeiting was committed knowingly given that Defendants continued to use the mark after responding to the March 6, 2020 cease-and-desist letter. *Id.* at 13; ECF No. 1-8. Defendants counterfeited MMI's round logo trademark under 15 U.S.C. § 1114(1).

As discussed above, Defendants' use of "Money Management Consultant" and its variations began before MMI's filing of federal registration of the mark. ECF Nos. 1 at 5, 8; 1-1 at 4. However, MMI has shown that Defendants' activities using the mark continued to occur after MMI federally registered "Money Management International." ECF No. 1 at 9–14. MMI filed federal trademark registration for "Money Management International" on March 24, 2020. ECF No. 1-1 at 4. On January 19, 2021, the Defendants' used a colorable imitation of MMI's federally registered mark when it registered the "moneymanagementco.com" internet domain name. *Id.* at 11. Defendants' counterfeiting of MMI's "Money Management International" occurred, and continues to occur, after federal registration. MMI has also shown this counterfeiting was committed knowingly given that Defendants received, and responded to, a cease-and-desist letter sent on March 6, 2020. *Id.* at 13. Defendants

7

counterfeited MMI's "Money Management International" trademark under 15 U.S.C. § 1114(1).

### c. Lanham Act Relief
#### i. Permanent Injunction

This court is authorized "to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a). The first user of the mark "in the marketplace is 'entitled to enjoin'" the later user "from using the mark or one that deceptively similar to it." *Reservoir, Inc. v. Truesdell*, 1 F. Supp. 3d 598, 609 (S.D. Tex. 2014) (citing *Union Nat'l Bank v. Union Nat'l Bank*, 909 F.2d 839, 842–43 (5th Cir. 1990)). To obtain injunctive relief, MMI must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, LLC,* 547 U.S. 388, 391 (2006). Defendants' use of MMI's trademark and trade dress constitutes an irreparable injury to the established reputation of MMI. There is no evidence that monetary damages alone will prevent future infringement given the Defendants' prior failure to respond to cease-and-desist letters and default in this court. There is also no evidence that Defendants will experience more than minimal hardship by being enjoined from further violating the Lanham Act. Finally, "[t]he public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." *Board of Regents of the University of Houston System v. Houston College of Law, Inc,* 214 F. Supp. 3d 573, 605 (S.D. Tex. 2016).

MMI has met all requirements for the issuance of a permanent injunction against Defendants' use MMI's trademarks: the mark consisting of a round logo containing stylized letters "MMI"

8

accompanied by the text "Money Management International," Registration No. 2,309,704, and the mark consisting of the words "Money Management International," Registration No. 6,168,927.

### ii. Statutory Damages

Plaintiffs may elect to recover statutory damages "involving the use of a counterfeit mark . . . in connection with the sale, offering for sale, or distribution of goods or services." 15 U.S.C. § 1117(c). For the purposes of statutory damages, the mark must be "a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office." 15 U.S.C. § 1116(d)(1)(B)(i). The court may award statutory damages not less than $1,000 or more than $200,000 per counterfeit mark per type of service sold. 15 U.S.C. § 1117(c)(1). However, the court may award up to $2,000,000 per counterfeit mark per type of service sold where the "use of the counterfeit mark was willful." 15 U.S.C. § 1117(c)(2). A district court has wide discretion in awarding damages, but they must not be punitive or inequitable. *See Dial One of the Mid-South, Inc. v. BellSouth Telecomms., Inc.*, 401 F.3d 603, 609 (5th Cir. 2005).

MMI has elected statutory damages and requests that the court grant them in the amount of $250,000 for the use of each mark in advertising both their credit and debt counseling services, totaling $1,000,000. ECF No. 21 at 43.

The court found above that Defendants engaged in counterfeiting the round logo and "Money Management International" trademarks under 15 U.S.C. § 1117(c). MMI has also shown that Defendants' use of the counterfeit marks was willful given the nature of the counterfeiting and Defendants' persistence in spite of MMI's efforts to resolve the dispute. ECF No. 1 at 11–13.

MMI has not demonstrated that "debt counseling" and "credit counseling" services are distinct as used here. MMI has not pleaded that either it or Defendants make a meaningful distinction between the two services. The terms accompany each other and appear interchangeable throughout MMI's own pleadings. ECF No. 1 at 4–5, 7–9, 16. Relevant to a trademark counterfeiting claim, MMI's own

mark registrations from the United States Patent and Trademark Office classify the two services under the same "Class 36." ECF No. 1-1 at 2–4. As a result, MMI has shown two, not four, counts of using a counterfeit mark entitling them to awards of statutory damages.

MMI has not pleaded or presented facts to guide the court in making a non-punitive and equitable award of statutory damages. For example, MMI has not provided facts to show the marks' valuations; lost profits or revenue; Defendants' unjust enrichment; or any other quantifiable measure of damages. Thus, the court declines to award the requested statutory damages for each count. On the other hand, given that there is some evidence of actual confusion, the court will not follow other courts that have declined to award any statutory damages based on limited factual support. *See* e.g., Phillip Morris USA Inc. v. Lee, 549 F. Supp. 2d. 839, 855 (W.D. Tex. 2008) (declining to award statutory damages despite a willful violation); AARP v. Sycle, 991 F. Supp. 2d 224, 233–34 (D.D.C. 2013) (declining to award statutory damages absent some evidence to support an award).

The court considers that MMI gave a description of the services it offers and states that its funding for the past three years exceeds $100 million. ECF No. 22-2 at 6. MMI, as a nonprofit corporation, relies predominantly on entities such as foundations and the federal government for funding based on its reputation and goodwill. *Id.* at 2. There is also evidence that the actual confusion caused by Defendants' use of MMI's marks is causing actual damage to its goodwill. ECF No. 1 at 12–13. Before considering willfulness, the court finds that statutory damages of $10,000 per violation are warranted. This amount of damages is not punitive and is equitable under the facts of this case.

Where the violation is willful the court may award up to $2 million in statutory damages. The plain text of the statute indicates to the court that the intent of the Lanham Act is to multiply an award by a factor of ten if willfulness is found. *Compare* 15 U.S.C. §§ 1117(c)(1) and 1117(c)(2) (establishing maximum damages at

$200,000 except where the use was willful which raises the maximum to $2,000,000); *see also Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp.*, 954 F. Supp. 2d 145, 156 (E.D.N.Y. 2013) (employing the same reasoning based on the text of the statute). The court finds the Defendants' conduct is willful given the nature of the infringement, counterfeiting, and default in this case. The court thus multiplies the damages award by ten resulting in an award of $200,000.

### d. *ACPA and Relief*

The ACPA imposes civil liability where a person uses a protected mark with a "bad faith intent to profit" and registers or uses a domain name that is identical or confusingly similar to a mark "that is distinctive at the time of registration of the domain name." 15 U.S.C. § 1125(d)(1)(A). "'To prevail on the merits of an ACPA claim, [a plaintiff] must show that 1) its mark is a distinctive or famous mark entitled to protection; 2) [defendant's] domain name[] [is] identical or confusingly similar to [the plaintiff's] mark; and 3) [defendant] registered the domain name[] with the bad faith intent to profit from [it].'" *Bulbs 4 East Side, Inc. v. Ricks*, 199 F. Supp. 3d 1151, 1167 (S.D. Tex. Aug. 10, 2016) (citing *Texas Int'l Prop Assocs. V. Hoerbiger Holding AG*, 624 F. Supp. 2d 582, 587 (N.D. Tex. 2009)). As discussed above, all well pleaded factual allegations of the complaint are accepted as true. *Shipco Gen., Inc.*, 814 F.2d at 1014. For relief, "a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." 15 U.S.C. § 1125(d)(1)(C).

As discussed above, MMI has shown that it held a distinctive common law trademark in "Money Management International" through its exclusive use since 1998 and the high quality of its services. MMI's alleges that Defendants' domain name is confusingly similar to MMI's distinctive mark. ECF No. 1 at 6. MMI also has shown that it has operated "moneymanagementinternational.org" since September of 1998. *Id.*

The ACPA lists nine non-exhaustive factors courts may consider to find bad faith. 15 U.S.C. § 1125(d)(1)(B)(i). The court specifically considers the potential trademark or other intellectual property rights of the defendant, the intent to divert customers from the mark owner's online location, and the timing of the registration of the domain name "moneymangementco.com." *Id.* at (I), (V). As discussed above, Defendants have no trademark or other intellectual property rights in the name. MMI has shown that Defendants had the intention to divert MMI customers to their own site. ECF No. 1 at 9, 11. Most clearly demonstrating Defendants' bad faith, Defendants registered the offending domain name ten months after receiving the first cease-and-desist letter notifying them of a trademark dispute. *Id.* at 11, 13. MMI has established Defendants' liability under the ACPA. MMI is entitled to an order transferring the domain name ownership of "moneymanagementco.com" from Defendants to MMI.

3. *Attorney's Fees and Costs*

The court may award reasonable attorneys' fees in "exceptional cases." 15 U.S.C. § 1117(a). "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014) (analyzing identical language in the Patent Act); *see also Baker v. Deshong,* 821 F.3d 620, 625 (5th Cir. 2016) (establishing the *Octane Fitness* standard applies to 15 U.S.C. § 1117(a)). Exceptional cases can also be charactered as malicious, fraudulent, or willful. *See Schlotzsky's, Ltd. v. Sterling Purchasing & Nat'l Distribution Co.*, 520 F.3d 393, 402 (5th Cir. 2008). The court makes the case-by-case determination considering the totality of circumstances. *Octane Fitness, LCC,* 572 U.S. at 554. When "there is no evidence about the [defendants'] state of mind, some courts have found that defendants are deemed to have admitted they acted knowingly and intentionally by virtue of their default." *Laerdal Med.*

*Corp. v. Basic Med. Supply, LLC,* Civil Action H-16-35, 2016 WL 6436557 at *4 (S.D. Tex. Oct. 31, 2016) (citing examples).

This is an exceptional case and attorneys' fees are warranted. Defendants defaulted after receiving multiple cease-and-desist letters and proper service in this lawsuit. Defendants registered "moneymanagementco.com" ten months after Defendant Le responded to MMI's first cease-and-desist letter. Defendant Le continues to use MMI's registered trademark on his LinkedIn profile. Defendants appear to have used MMI's marks to help facilitate the use of MMI's corporate credit as their own to procure supplies. Defendants' behavior demonstrates malicious, fraudulent, and willful intent in addition to their default.

The court has scrutinized the record demonstrating the time spent by the attorneys in this case and finds it reasonable. ECF Nos. 22-1, 22-3. The issues involved in this case, as demonstrated by the court's own lengthy analysis above, were complex and required significant expertise, research, and briefing. The number of hours spent on this lawsuit, 123.2, and the hourly rate charged, $350, to MMI are appropriate. Additionally, the Defendants in this case have attempted to thwart MMI's efforts to legitimately pursue their legal rights and the use of a process server was appropriate. MMI has shown their requests of attorneys' fees in the amount of $43,120 and costs in the amount of $971.59 are reasonable and warranted in this case.

*4. Conclusion*

Based on the evidence of record, the court recommends that default judgment be entered in favor of MMI in the form of a permanent injunction against Defendants' use of MMI's trademarks and trade dress; an order to transfer the domain name "moneymanagementco.com" from Defendants to MMI; statutory damages under 15 U.S.C. § 1117(c) in the amount of $200,000; $43,120 in attorneys' fees; costs in the amount of $971.59; and post-judgment interest at the effective rate on the date of entry of judgment.

The parties have fourteen days from service of this memorandum and recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on April 27, 2022.

_____
Peter Bray
United States Magistrate Judge